# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

SARAH SPITALNICK,                )
    *Plaintiff*,              )
v.                               )
                    )   Case No. 24-cv-1367
KING & SPALDING,                 )
    *Defendant*,             )
                    )

---

## <u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

QUAINTON LAW, PLLC
Eden P. Quainton, Esq.
2 Park Avenue, 20th Floor
New York, NY 10016
Phone: (212) 419-0575
Eden.quainton@quaintonlaw.net

Jonathan Gross Esq.
Law Office of Jonathan S. Gross
Bar Number: 21800
2833 Smith Ave., Suite 331
Baltimore MD, 21208
Phone: (443) 813-0141
jonathansgross@gmail.com

*Attorneys for Plaintiff Sarah Spitalnick*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ....................................................................................... 1

LEGAL STANDARD......................................................................................................... 2

   A.   Fed. R. Civ. P. 12(b)(1)...................................................................................... 2

   B.   Fed. R. Civ. P. 12(b)(6)...................................................................................... 3

PROCEDURAL BACKGROUND..................................................................................... 5

FACTS ................................................................................................................................ 5

LEGAL ARGUMENT ...................................................................................................... 6

   I.     PLAINTIFF HAS STANDING TO BRING HER CLAIM AGAINST KING & SPALDING................................................................................................................ 6

     A.   Plaintiff Suffered an Injury in Fact. ................................................................ 7

     B.   Plaintiff's Injury is Traceable to King & Spalding and Was not Self-inflicted............. 11

     C.   Plaintiff's Injury is Redressable................................................................... 13

   II.    PLAINTIFF'S § 1981 CLAIM MAY PROCEED. ......................................... 14

     A.   Ms. Spitalnick's § 1981 Claim is Not Time-Barred. ................................... 14

     B.   The King & Spalding Advertisement Was Dissuasively Discriminatory..................... 16

   III.   PLAINTIFF HAS STATED A CLAIM UNDER TITLE VII. ...................................... 17

     A.   King & Spalding's "Efforts to Diversify" Is an Impermissible Pretext for Hiring on the Basis of Race and Sex. ......................................................................... 18

     B.   Plaintiff Has Adequately Alleged Causation. .............................................. 20

   IV.   PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR PUNITIVE DAMAGES AND AN APOLOGY................................................................................. 21

     A.   Punitive Damages ........................................................................................ 21

     B.   Apology........................................................................................................ 22

CONCLUSION.................................................................................................................. 23

# **TABLE OF AUTHORITIES**

### **Cases**

*Allah-Mensah v. Law Office of Patrick M. Connelly,*
  *P.C.*, Civ. No. PX-16-1053, 2016 WL 6803775 (D. Md. Nov. 17, 2016) .................................. 3

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................................... 3, 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 3, 4

*Brown-Thomas v. Hynie,*
  412 F. Supp. 3d 600 (D.S.C. 2019). ................................................................................. 4

*Brown v. McLean*,
  159 F.3d 898 (4th Cir. 1998) .......................................................................................... 20

*Cellcontrol, Inc. v. Mill Mountain Cap., LLC*,
  No. 7:21-CV-246, 2022 WL 598752 (W.D. Va. Feb. 28, 2022) ................................. 5

*CGM, LLC v. BellSouth Telecomms., Inc.*,
  664 F.3d 46 (4th Cir. 2011) .............................................................................................. 3

*Cobb v. Towson Univ.*,
  No. 14-cv-02090-ELH, 2015 WL 3654562
  (D. Md. June 10, 2015) ..................................................................................................... 3

*Davis v. Thompson,*
  367 F.Supp.2d 792 (D. Md. 2005) ................................................................................... 2

*Duffy v. Wolle*,
  123 F.3d 1026 (8th Cir. 1997) ........................................................................................ 18

*Ennis v. Poe*,
  661 F. Supp. 3d 554 (W.D. Va. 2023) .............................................................................. 3

*Evans v. B.F. Perkins Co.*,
  166 F.3d 642 (4th Cir. 1999) ............................................................................................ 3

*Foster v. Howard Cmty. Coll.*,
    No. CIV.A. RDB-13-1395, 2014 WL 758027 (D. Md. Feb. 24, 2014) ................................. 2, 3

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) ......................................................................................... 3

*Hammer v. Ashcroft*,
    383 F.3d 722 (8th Cir. 2004) ....................................................................................... 19

*Holowecki v. Fed. Express Corp.*,
    440 F.3d 558 (2d.Cir. 2006) .......................................................................................... 7

*Holsey v. Armour Co.*,
    743 F.2d 199 (4th Cir. 1984) ......................................................................................... 8

*International Brotherhood of Teamsters v. United States*,
    431 U.S. 324 (1977) ............................................................................... 8, 9, 11, 15, 17

*Jarvis v. FedEx Off. & Print Servs., Inc.*,
    No. CV DKC 2008-1694, 2009 WL 10709217 (D. Md. Mar. 10, 2009) ................................. 21

*Johnson v. Hugo's Skateway*,
    974 F.2d 1408 (4th Cir. 1992) ..................................................................................... 22

*Jones v. Cap. Transportation Inc.*,
    No. 4:14CV15-RH/CAS, 2015 WL 6126832 (N.D. Fla. Oct. 16, 2015) ................................. 22

*Jones v. Henderson Properties, Inc.*,
No. 3:23-CV-00744-FDW-SCR, 2024 WL 2820369 (W.D.N.C. June 3, 2024) ........................ 22

*Kerns v. United States,* 585 F.3d 187 (4th Cir.2009) ....................................................... 3

*Kramer v. Bd. of Educ. of Baltimore Cnty.*,
    No. CV WMN-10-2346, 2011 WL 13362532 (D. Md. Nov. 8, 2011) ....................................... 4

*Laber v. Harvey,*
    438 F.3d 404 (4th Cir. 2006) ......................................................................................... 5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..................................................................................................... 7

*Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Auth.*,
   70 F. Supp. 2d 580 (D. Md. 1998), *aff'd sub nom. Maryland Minority Contractors Ass'n, Inc.*
   *v. Maryland Stadium Auth.*, 198 F.3d 237 (4th Cir. 1999) ........................................................ 13

*McDougall v. Maryland Transit Admin.*,
   No. 11–cv-3410-WDQ, 2012 WL 1554924
   (D. Md. Apr. 27, 2012)……………………………………………………………………………7

*McKinney v. Cleveland Cnty. Bd. of Educ.*,
   No. 3:20-CV-221-MOC-DSC, 2020 WL 6803846 (W.D.N.C. Nov. 19, 2020), *aff'd*, No. 22-
   1697, 2023 WL 4637115 (4th Cir. July 20, 2023) ..................................................................... 21

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) .................................................................................................. 12

*Miller v. Brown*,
   462 F.3d 312 (4th Cir.2006) ...................................................................................................... 7

*Mylan Labs., Inc. v. Matkari*,
   7 F.3d 1130 (4th Cir. 1993) ........................................................................................................ 4

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*,
   468 F.3d 826 (D.C. Cir. 2006) ................................................................................................. 12

*Norris v. Poole*,
   No. 8:10-750-JFA-BHH, 2010 WL 1903970 (D.S.C. Apr. 19, 2010) ...................................... 23

*Ostrzenski v. Seigel*,
   177 F.3d 245 (4th Cir. 1999) ..................................................................................................... 4

*Payne v. Chapel Hill N. Properties, LLC*,
   947 F. Supp. 2d 567 (M.D.N.C. 2013) ................................................................................... 6, 7

*Pinchback v. Armistead Homes Corp.*,
   907 F.2d 1447 (4th Cir. 1990) ........................................................................................... passim

*Planned Parenthood of S.C. v. Rose*,
   361 F.3d 786 (4th Cir.2004) ...................................................................................................... 7

*Pruitt v. Resurgent Cap. Servs., LP*,
   610 F. Supp. 3d 775 (D. Md. 2022) ................................................................. 3

*Republican Party of N.C. v. Martin*,
   980 F.2d 943 (4th Cir. 1992)............................................................................. 4

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
   945 F.2d 765 (4th Cir. 1991)............................................................................. 3

*Torgerson v. City of Rochester*,
   643 F.3d 1031 (8th Cir. 2011).......................................................................... 18

*United States EEOC v. Consol Energy, Inc.*,
   860 F.3d 131 (4th Cir. 2017)............................................................................ 21

*United States v. Gregory,*
   871 F.2d 1239 (4th Cir. 1989)....................................................................... 8, 20

*United States v. Hughes*,
   No. CR 2016-0021-3, 2021 WL 5236491 (D.V.I. Nov. 9, 2021) ......................... 23

*Villescas v. Abraham*,
   285 F. Supp. 2d 1248 (D. Colo. 2003) ............................................................. 23

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*,
   108 F. Supp. 2d 549 (W.D. Va. 2000) .............................................................. 20

*Wallace v. Chrysler Credit Corp.*,
   743 F. Supp. 1228 (W.D. Va. 1990) ................................................................... 4

*Wells v. Lobb & Co., Inc.*,
   Nos. Civ.A. 97-WM-1011, Civ.A. 97-WM-1317, Civ.A. 98-WM-279, 1999 WL 1268331 (D. Colo. Dec. 1, 1999) .......................................................... 23

*White Tail Park, Inc. v. Stroube*,
   413 F.3d 451 (4th Cir.2005)............................................................................... 6

*White v. Am. Fed'n of State Cnty. & Gov't Emps. Union Loc. 2250*,
   No. CV DKC 23-3161, 2024 WL 3161589 (D. Md. June 25, 2024)....................... 7

*Williams v. 1199 SEIU United Healthcare Workers E.*,
  12-cv-0072-WMN, 2012 WL 2923164
  (D. Md. July 17, 2012) ........................................................................................... 11

*Zimmerman v. City of Austin*,
  881 F.3d 378 (5th Cir. 2018) ................................................................................ 11

## **Statutes**

28 U.S.C. § 1658 ........................................................................................................ 14
42 U.S.C. § 1981 .................................................................................... 14, 15, 16, 21
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 .......................... passim

## **Other Authorities**

Mary McKlveen Madden, *Strengthening Protection of Employees at Home and Abroad: The
  Extraterritorial Application of Title VII of the Civil Rights Act of 1964 and the Age
  Discrimination in Employment Act*, 20 Hamline L. Rev. 739, 768 (1997) .............................. 15

## **Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 1, 2, 3, 5
Fed. R. Civ. P. 12(b)(6 ........................................................................................ 1, 3, 4, 5
Fed. R. Civ. P. 15(a) ...................................................................................................... 4
Fed. R. Civ. P. 8(a)(2) ................................................................................................... 4

## PRELIMINARY STATEMENT

This is case is about an intentionally discriminatory job advertisement posted at the University of Baltimore Law School by Defendant King & Spalding LLP ("Defendant" or "King & Spalding") that sought candidates for a first-year summer associate cultural diversity leadership program at King & Spalding with the "must have" qualifications that the candidates be "ethnically or culturally diverse" or "members of the LGBTQ community." Plaintiff Sarah Spitalnick ("Ms. Spitalnick" or "Plaintiff") a straight, white woman who grew up in the suburbs of Reading, PA had dreamt of acquiring the legal skills to help her advocate on behalf of minorities and victims of oppression but lacked these "must have" qualifications and was deterred from applying for the position. Given that Ms. Spitalnick lacked the "must have" qualifications, she knew that applying for the position would be a futile gesture. Plaintiff filed a grievance with the Equal Employment Opportunity Commission (the "EEOC") and obtained an EEOC determination that Defendant's advertisement was discriminatory and had deterred her from pursuing an opportunity at King & Spalding.

Notwithstanding the EEOC's finding, King & Spalding now brings a motion to dismiss (the "Mot. Dismiss") based on an alleged lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and an alleged failure to state a claim under Fed. R. Civ. P. 12(b)(6). King & Spalding ignores both the EEOC finding, which at an absolute minimum, indicates there is a factual question that cannot be resolved on a motion to dismiss, as well as the applicable Supreme Court and Fourth Circuit precedent stating that, where an application would constitute a "futile gesture," a victim of discrimination need not go through the motions of submitting a pointless application to have standing and to be able to recover on the merits. Despite this precedent, Defendant urges the Court to dismiss the complaint on the grounds that Plaintiff never actually applied for the job

1

at issue, claiming that effectively deterring a candidate from applying for a position on racial and sexual lines operates to deprive the deterred candidate of her day in court.

Defendant's position does not withstand scrutiny. Both Plaintiff's standing and her claim on the merits flow from the overt discrimination of a message that intentionally dissuaded any students without the right skin color or sexual orientation from applying. Indeed, Ms. Spitalnick submits that placing explicit racial and sexual restrictions on an applicant pool for a position advertised, of all places at a law school designed to instill respect for neutral, dispassionate, color-blind adjudication of disputes, constitutes such a departure from the conduct expected of officers of the court such as King and Spalding that it gives rise to a plausible claim for punitive damages.

Whether or not King and Spalding believed it was promoting "diversity," the effect of its advertisement was to send a particularly toxic message to young lawyers: success in the profession is not a question of merit, but a function of skin color and sexual orientation, immutable characteristics that should neither constitute a bar nor a boon in the pursuit of a legal career. The Court should allow the case to proceed and give Plaintiff her day in court, with the opportunity to redress the wrong done by Defendant's overt, and impermissible, discrimination.

## **LEGAL STANDARD**

### A.  Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Foster v. Howard Cmty. Coll.*, No. CIV.A. RDB-13-1395, 2014 WL 758027, at *1 (D. Md. Feb. 24, 2014) (citing *Davis v. Thompson,* 367 F.Supp.2d 792, 799 (D. Md. 2005)). A challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual

2

challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Foster v. Howard Cmty. Coll.*, No. CIV.A. RDB-13-1395, 2014 WL 758027, at *1 (D. Md. Feb. 24, 2014) (citing *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir.2009) (citation omitted). Generally, challenges to standing are addressed as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Ennis v. Poe*, 661 F. Supp. 3d 554, 558–59 (W.D. Va. 2023) (citing *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011).

When resolving a motion under Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). In response to challenges to plaintiff's standing to bring suit in federal court, "the court determines whether the allegations in the Complaint, taken as true, are sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and *Iqbal/Twombly*." *Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (citing *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, Civ. No. PX-16-1053, 2016 WL 6803775, at *2 (D. Md. Nov. 17, 2016). A trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (citing *Bell v. Hood,* 327 U.S. 678, 682 (1946).

B. Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d

943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court should not grant a Rule 12(b)(6) motion unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts commonly refer to this as the *Twombly/Iqbal* standard for federal pleadings, which a plaintiff needs to overcome to survive a Rule 12(b)(6) dismissal. *See Brown-Thomas v. Hynie,* 412 F. Supp. 3d 600, 605 (D.S.C. 2019). A "reasonable cause" determination plainly weighs *against* a finding that plaintiff has failed to state a claim on which relief may be granted. *See Kramer v. Bd. of Educ. of Baltimore Cnty.*, No. CV WMN-10-2346, 2011 WL 13362532, at *1 (D. Md. Nov. 8, 2011) (denying motion to dismiss following EEOC reasonable cause determination). In addition, "[t]he court has broad discretion to decide whether to grant leave to amend" when considering a Rule 12(b)(6) motion to dismiss. *Wallace v. Chrysler Credit Corp.*, 743 F. Supp. 1228, 1236 (W.D. Va. 1990). Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). *See Laber v.*

*Harvey,* 438 F.3d 404, 426 (4th Cir. 2006); *Cellcontrol, Inc. v. Mill Mountain Cap., LLC*, No.

7:21-CV-246, 2022 WL 598752, at *6 (W.D. Va. Feb. 28, 2022).

## PROCEDURAL BACKGROUND

This case began with the filing of a Verified Complaint (the "Complaint") on May 9,

2024 by Ms. Spitalnick. Dkt. 1. Prior to filing the Complaint, Plaintiff exhausted her

administrative remedies by timely filing a charge of discrimination with the EEOC on April 27,

2021. Complaint ¶ 5. The EEOC Charge, No. 570-2021-0788, is incorporated by reference into

the Complaint. *Id.* On or about February 13, 2024, the EEOC issued a letter (the "Determination

Letter") finding reasonable cause to believe that Defendant discriminated against Ms. Spitalnick

on the basis of race and sexual orientation in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"). A true and accurate copy of the EEOC

determination letter is set forth as Exhibit A to the Declaration of Eden P. Quainton, dated

November 8, 2024 (the "Quainton Decl."). On September 19, 2024, Defendant King & Spalding,

filed a motion to dismiss the Complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1)

and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## FACTS

In February 2021, Ms. Spitalnick was a first-year law student at the University of

Baltimore School of Law ("UB Law") and was actively engaged in a search for a summer

internship for that summer. Complaint, Dkt. 1 ¶ 10. UB Law has an online platform called UB

Law Connect where employers can advertise open positions directed at UB Law students. *Id.* ¶

11. The platform allows UB Law students to directly apply for the posted positions. *Id.*

Defendant posted an advertisement on the UB Law Connect platform encouraging UB Law

students to apply for a 1L Summer Associate Leadership Counsel Legal Diversity (hereinafter

"LCLD") position. *Id.* ¶ 12. Defendant's advertisement stated that candidates for the Summer Associate LCLD position "must have" an "ethnically or culturally diverse background or be a member of the LGBT community." *Id.* ¶ 13. The job posting is attached as Exhibit A to the Complaint. The Summer Associate position paid $4,135.00 per week. *Id.* ¶¶ 15, 16. At the time, as sworn in her verified Complaint, Ms. Spitalnick possessed a real and active interest in the LCLD internship. *Id*. ¶ 17 At the time of the Defendant's job posting, Ms. Spitalnick met all stated qualifications for the LCLD internship position aside from the requirement that she "must have" an "ethnically or culturally diverse background or be a member of the LGBT community." *Id.* ¶ 20; *see* Declaration of Sarah Spitalnick, dated November 5, 2024 (the "Spitalnick Decl.") ¶ 4. Despite being otherwise qualified, Ms. Spitalnick was deterred from applying because of Defendant's stated requirement that candidates "must have" an ethnically or culturally diverse background or be a member of the LGBT community, and Ms. Spitalnick possessed neither of the stated ethnic or sexual orientation requirements. Complaint ¶ 7; Determination Letter at 1; Spitalnick Decl. at ¶¶ 4-5. Ms. Spitalnick did not apply for the LCLD position because doing so would have been a futile gesture in light of Defendant's expressly stated racial and sexual orientation requirements. Complaint ¶ 22.

## **LEGAL ARGUMENT**

I.    PLAINTIFF HAS STANDING TO BRING HER CLAIM AGAINST KING & SPALDING.

For a case or controversy to be justiciable in federal court, a plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf.'" *Payne v. Chapel Hill N. Properties, LLC*, 947 F. Supp. 2d 567, 571 (M.D.N.C. 2013) (citing *White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 458 (4th Cir.2005) (quoting *Planned Parenthood of S.C. v.*

*Rose,* 361 F.3d 786, 789 (4th Cir.2004)). The party seeking to invoke the federal courts'

jurisdiction has the burden of satisfying Article III's standing requirement. *Miller v. Brown,* 462

F.3d 312, 316 (4th Cir.2006). To meet that burden, a plaintiff must demonstrate three elements:

(1) that she has suffered an injury in fact that is "concrete and particularized" and "actual or

imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a

favorable decision is likely to redress the injury. *Payne v. Chapel Hill N. Properties, LLC*, 947 F.

Supp. 2d 567, 572 (M.D.N.C. 2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61

(1992).

    A.  <u>Plaintiff Suffered an Injury in Fact</u>.

    Defendant claims that Plaintiff suffered no "injury in fact" because she was deterred from

applying for the LCLD position and therefore never submitted an application for the position.

Mot. Dismiss at 7, 10. This claim ignores the EEOC determination letter finding expressly that

there is a reasonable basis to conclude that Ms. Spitalnick was the victim of racial and sexual

discrimination ***<u>because</u>*** she was deterred from applying for the LCLD position. As the EEOC

found:

> Based on the foregoing, I find that there is reasonable cause to believe that Charging
> Party was discriminated against because of her race and sexual orientation when she was
> deterred from applying for the summer associate position in violation of Title VII.
> Determination Letter at 1.[1]

---

[1] It is well established that a court may consider an EEOC charge and other EEOC documentation as documents integral to the complaint. *See White v. Am. Fed'n of State Cnty. & Gov't Emps. Union Loc. 2250*, No. CV DKC 23-3161, 2024 WL 3161589, at *2 (D. Md. June 25, 2024); *see also Williams v. 1199 SEIU United Healthcare Workers E.*, 12-cv-0072-WMN, 2012 WL 2923164, at *1 n.1 (D. Md. July 17, 2012) ("a court may consider an EEOC charge and other EEOC documentation [without converting a motion to dismiss into a motion for summary judgment] because such documents are integral to the complaint") (citing *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d.Cir. 2006); *McDougall v. Maryland Transit Admin.*, No. 11–cv–3410-WDQ, 2012 WL 1554924 at n.3 (D. Md. Apr. 27, 2012)); *Cobb v. Towson Univ.*, No. 14-cv-02090-ELH, 2015 WL 3654562, at *5 (D. Md. June 10, 2015).

Put differently, the absence of an application is evidence of discrimination, not the other way around. Defendant ignores well-established law that plaintiffs who are deterred from applying for employment because of the humiliation of certain rejection have standing to pursue employment discrimination letters. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324 (1977) (affirming a finding that where a defendant has violated Title VII by discriminatory hiring and promotion policies and *rejecting* absence of injury argument as to employees who had not applied for the positions at issue because of the company's discriminatory practices). The Supreme Court went on to state, in unmistakably clear language, that:

> when a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

*Teamsters*, 431 U.S. at 365-66.

Following *Teamsters*, the Fourth Circuit has held that the "futile gesture" doctrine is "integral" to fair employment law. *See Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990);  *see also Holsey v. Armour Co.,* 743 F.2d 199, 208-09 (4th Cir. 1984); *United States v. Gregory,* 871 F.2d 1239, 1242 (4th Cir. 1989). The "failure to apply for a job does not preclude recovery if a claimant can demonstrate that he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied."  *Pinchback*, 907 F.2d at1451. The *Pinchback* court noted that a deterred plaintiff must "of course, possess the necessary qualifications for the

job." *Id*. Here, the "necessary qualifications" were precisely those that Plaintiff lacked for racial and sexual orientation reasons.

Defendant's job posting made clear that it would have been utterly futile for a white, straight woman to apply for a job the essential qualification for which was that the candidates "must have" an ethnically or culturally diverse background or be members of the LGBT community. Complaint, Dkt. 1, Ex. A. While the job posting also noted that it sought "highly qualified" candidates, this phrase qualifies the diverse background that was the *sine qua non* of applying for the position. The job posting sought highly qualified "diverse" candidates and broadcast its racist message: "whites need not apply." Because Ms. Spitalnik plausibly alleges that Defendant's posting deterred her from applying, Plaintiff has clearly stated an injury of fact of the type recognized by the Supreme Court in *Teamsters* and the Fourth Circuit in *Pinchback*. Whether "ethnically and culturally diverse" and "member of the LGTB "community" may imply something beyond their common meaning are fact questions that cannot be decided on a motion to dismiss. King & Spalding spills much ink attempting to establish that these words could be construed to include straight, white women, but this is not reasonably plausible, as the EEOC found, or at the very least requires discovery. Discovery will show whether *any* of the summer associates chosen for the 1L LCLD Summer Associate program were straight and white. Defendant disingenuously argues that if Ms. Spitalnick had been interested in the King & Splading summer associate program, she could have contacted the firm's recruiting department.

Mot. Dismiss. at 10. But a generic summer associate position was **_not_** what was advertised by

King & Spalding. Rather, the firm advertised a special opportunity **_reserved exclusively_** for

ethnically and culturally diverse students and members of the LGBTQ community. Ms.

Spitalnick was and is sincerely interested in issues of racial and social justice, and the 1L Law

Scholars program was precisely the opportunity she was looking for. *See* Spitalnick Decl. at ¶¶

4-5.  But no reasonable straight, white person could have believed they possessed the "must

have" qualifications for this job—a particular skin color and a particular sexual orientation, or

that a call to the firm's hiring department would "clarify" the advertisement's unmistakable

message. A Black student would not have called the hiring department posting a "Whites only"

job to inquire if there was perhaps some exception he had overlooked.

  Indeed, the very fact that King & Spalding was advertising at the University of

Baltimore, ranked 135 nationally, well outside the range of schools from with Defendant

generally draws, but with a student body 21% African-American and 10% Hispanic, well above

the racial distribution of these groups at top 20 law schools, indicates that the Defendant was

making an aggressive push to hire students based on the color of their skin and the nature of their

sexuality, directly harming those students who might otherwise be interested in the program but

were of the wrong race or sexual orientation. To the extent there is any theoretical doubt about

what the words might mean, discovery will show that as a practical matter, it is only non-straight

ethnic minorities who are considered "diverse"—either at King & Spalding or any of the other

firms in the LCLD program, and that an average, straight, white, woman from the Reading, PA

suburbs would never qualify as ethnically and culturally diverse or as a member of the LGTBQ

community. The Court cannot take Defendant's self-serving "trust us" representations at the

pleading stage, given the unmistakably language of the advertisement and the conclusion of the

EEOC in evaluating the same language.

     B.    <u>Plaintiff's Injury is Traceable to King & Spalding and Was not Self-inflicted</u>.

     Defendant's "traceability" argument merely reiterates its injury in fact argument:

Plaintiff's harm was self-inflicted because she felt deterred from applying, and therefore did not

submit an application. Mot. Dismiss 12-13. Defendant suggests that the chain of causation from

the act of deterrence in publishing a racist advertisement and the fact of being deterred by the

advertisement is somehow too "attenuated" and "self-inflicted" to be "traceable" to King &

Spalding. Mot. Dismiss at 12.

     To see the flaw in this argument, the Court need only consider a program promoted by a

law school that advertised for a special program reserved for highly qualified White and straight

students. A black lesbian student, regardless of her grades, would be deterred from applying. The

Court would have no difficulty applying *Teamsters* and *Pinchback*—and finding the

advertisement statutorily and constitutionally impermissible.

     The cases Defendant cites in support of its position in fact illustrate the impermissible

nature of Defendant's conduct. In *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir.

2018), cited on page 12 of the Mot. Dismiss, a local politician chose not engage in any

advertising outside of the City of Austin because the aggregate limit on out-of-city donations did

not appear worth his while  But a voluntary decision not to pursue donations based on a

subjective cost-benefit calculation bears no comparison with a situation in which a student is deterred from applying for a position because she lacks "must have" immutable racial or sexual traits.

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006), cited on pages 12-13 of the Mot. Dismiss, is also of no help to Defendant. In that case, a pro-abortion association with over 4000 members claimed there was a hypothetical conflict between a Congressional statute and an administrative regulation, arguing that an extremely implausible interpretation of the statute *might* conflict with the applicable federal regulation, but failing to present any evidence than any of the 4000 members had ever encountered any difficulty in reconciling either the new statute or its predecessor with the applicable regulation. *Id.* at 830. In the context of an extreme hypothetical raising an implausible edge case, the court found it was a "self-inflicted injury" for the plaintiff not to seek administrative rulemaking before initiating litigation. *Id*. at 831. In contrast, here, the implausible edge case is the one brought forward by Defendant (that the LGBTQ "community," is not limited to individuals who are actually lesbian, gay, bis-sexual, transexual or queer), whereas Plaintiff followed the common sense meaning of the advertisement – as sustained by the EEOC – that a white, straight woman did not possess any of the "must have" immutable characteristics. For the Court to rule in favor of Defendant as a matter of law would be to enshrine a self-serving implausible rationale over the lived experience of Plaintiff and the considered judgment of the EEOC.

Finally, *Mendia v. Garcia,* 768 F.3d 1009, 1013 and Note 1 (9th Cir. 2014), cited on page 13 of the Mot. Dismiss, is of even less help. There, a U.S. citizen chose to remain in custody out of an alleged fear that he would be deported – an obvious impossibility – and then claimed damages for the consequences of his own choice. *Id.* Other than its use of the words, "self-

inflicted," this case bears no comparison to the deterrent effect of an advertisement that insists certain immutable characteristic are "must have" requirements.

As Defendant suggests, the "self-inflicted injury" concept is closely related to the ideas of conclusoriness and speculativeness. Mot. Dismiss at 13. But Defendant misapplies these concepts. Ms. Spitalnick's claim that she was deterred from applying for a job because the job advertisement set forth mandatory racial and sexual requirements she lacked is not "conclusory" or "speculative," but a common sense reading of the plain language of the advertisement.  It is *Defendant's* argument that a member of the LGBTQ "community" need not have the sexual characteristics of LGBTQ individuals that appears forced and far-fetched—and certainly failed to convince the EEOC. In fact, one of the cases cited by Defendant in support of its argument that Plaintiff's claim is too speculative stands for the exact opposition proposition. In *Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Auth*., 70 F. Supp. 2d 580, 587 (D. Md. 1998), *aff'd sub nom. Maryland Minority Contractors Ass'n, Inc. v. Maryland Stadium Auth.*, 198 F.3d 237 (4th Cir. 1999), cited on pages 9 and 13 of the Mot. Dismiss, the Court held individual contractors who failed to submit bids because of discriminatory bidder pre-qualification requirements ***did*** have standing to sue. *Id.*[2]

C.    Plaintiff's Injury is Redressable.

Defendant attempts an unconvincing sleight of hand by confusing a substantive conclusion with respect to discrimination and a jurisdictional conclusion with respect to redressability. As noted above, contrary to Defendant's argument, the *Marlyland Minority Contractor* court found against the individual contractor plaintiffs not because they lacked

---

[2] The *Minority Contractor's Ass'n* court found that the pre-qualification requirements did not demonstrate intentional discrimination, but this was a substantive, not a standing or jurisdictional conclusion. *Id.* at 593.

standing, but because the pre-qualification requirements at issue were not discriminatory. If the deterring conduct _is_ discriminatory, as it was here, the discrimination is clearly redressable through an award of damages. Plaintiff was excluded from consideration because of her racial and sexual characteristics, and need not show that if she _had been_ black or Latina or queer she would have defeated other black or Latina or queer candidates. If that were the law, no victim of _per se_ discrimination could ever sue for damages without showing he or she was superior to candidates chosen without discrimination, which does not make sense and would undermine the remedial goal of anti-discrimination law. _See Pinchback_, 907 F.2d at 1449 (black prospective purchase deterred by discriminatory housing practices entitled to damages without showing that, had she been white, she would have qualified). In the face of a discriminatory practice, the victim need only show that he or she comes within the scope of the discrimination, not that he possessed the same or better qualifications than a member of the privileged group. _Id._ (finding that defendant had a discriminatory policy and would have rejected plaintiff had she actually applied).

II.    PLAINTIFF'S § 1981 CLAIM MAY PROCEED.

    A.  Ms. Spitalnick's § 1981 Claim is Not Time-Barred.

Defendant argues that because Plaintiff's claim under 42 U.S.C. § 1981 was filed more than three years after the discriminatory job posting closed, Plaintiff's claim is time-barred. Mot. Dismiss at 14-15. However, Defendant's argument is based on the application of a three-year statute of limitations rather than the "catch-all" four-year statute under 28 U.S.C. § 1658 adopted in 1990. _See Jones v. R.R. Donnelley & Sons Co._, 541 U.S. 369, 371 (2004). The four-year statute of limitations applies to civil actions arising under an act of Congress subsequent to the enactment of § 1658. In 1991, Congress amended 42 U.S.C. § 1981 to cover "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," _id._ at 373, rather

than simply the "making and enforcing" of contracts.  *Id.* Defendant argues that a contractual

relationship that never arose because Plaintiff was deterred from applying falls under the pre-

1991 language relating to the making and enforcing of contracts, rather than coming within the

broader "benefit . . . of [a] contractual relationship." Put differently, the issue is whether the

"futile gesture" doctrine would have applied to a § 1981 claim before the 1991 amendments. As

far as Plaintiff has been able to determine, this is a question of first impression.

It is clear that the futile gesture doctrine applies in the context of Title VII. *See*

*Teamsters,* 431 U.S. at 366. It is also clear that the doctrine applied to *housing discrimination*

claims under § 1981 before the 1991 amendments. *See Pinchback*, 907 F.2d at 1452. However,

Plaintiff has not found any controlling authority to answer whether the doctrine would have

applied to contract cases such as Plaintiff's prior to the 1991 amendments. Reasoning from first

principles, however, the goal of the 1991 amendments was "to strengthen and improve Federal

civil rights laws, to provide for damages in cases of intentional employment discrimination, to

clarify provisions regarding disparate impact actions, and for other purposes." *Id*. Mary

McKlveen Madden, *Strengthening Protection of Employees at Home and Abroad: The*

*Extraterritorial Application of Title VII of the Civil Rights Act of 1964 and the Age*

*Discrimination in Employment Act*, 20 Hamline L. Rev. 739, 768 (1997). Defendant insists that

Ms. Spitalnick's failure to apply for the Law Scholars summer associate position dooms

Plaintiff's claim. *See e.g.*, Mot. Dismiss at 21, 25. But, as applied in the context of § 1981, this is

a *restrictive* reading of the statute, out of step with the broadly remedial and *progressive* goals of

the 1991 amendments. To the extent Congress aimed to *broaden* civil rights protections with the

1991 amendments, Defendant's argument results in the anomalous view that a doctrine which

was already well established under *Teamsters* and *Pinchback* in Title VII and § 1981 racial

discrimination cases should _not_ apply in the contract area, despite the broadening of the scope of contract-based protection from the 1991 amendments. The Court should decline to follow Defendant in its restrictive reading of the broadening language of the 1991 amendments, and should apply the four-year "catch all" statute of limitations to Plaintiff's § 1981 claim.

    B.  <u>The King & Spalding Advertisement Was Dissuasively Discriminatory</u>.

The plain language of the King & Spalding advertisement insists that applicants "_must have_" an "ethnically or culturally diverse" background or be members of the "LGBTQ community." The EEOC concluded that this language was discriminatory and would deter a white, heterosexual person from applying. Ignoring the EEOC determination, Defendant would have this Court look behind the plain language of the statute to what King & Spalding claims the advertisement "might" mean: "Culture _might_ encompass, for example, religious or family identity, regional identity, being a veteran or member of a military family, or being affiliated with a fraternal organization." Mot. Dismiss at 16 (emphasis added). Similarly, Defendant asserts that the reference to "community" "does not categorically exclude" straight women and that one "can imagine" gay and lesbian "family members" who could be considered members of the community. Mot. Dismiss at 17. But the interpretive exercise Defendant asks the Court to engage in does not comport with the proper inquiry on a motion to dismiss. On a motion to dismiss the Court's function is not to interpret what language "might mean" or to "imagine" counterfactual scenarios, but to assess the pleadings: here, Plaintiff plausibly alleges that the references to "ethnic and cultural diversity" and "LGBTQ community" membership excluded straight white women, an allegation whose plausibility the EEOC confirmed in its own determination. For the Court to follow the Defendant, it would essentially have to conclude that the EEOC

determination was completely contrary to the plain meaning of the advertisement as a matter of law.

But even though the language is clear on its face, any doubt raises a fact question. Evidence will show that "ethnic and cultural diversity" do not, in fact, include "white" applicants and no reasonable person at the Law School interpreted the language in that manner. Similarly, the evidence will show that LGBTQ "community" membership in the context of the job advertisement was not directed at family members of lesbian, gay, bisexual and transexual and queer students but at "sexually diverse" candidates, *i.e.*, candidates with a non-heterosexual sexual orientation. Defendant argues that "[t]he advertisement does not define what it means to "have an ethnically or culturally diverse background or be a member of the LGBT community," Mot. Dismiss at 5, thereby conceding that resolution of the dispute on a motion to dismiss is inappropriate.

Instructively in this regard, both *Teamsters* and *Pinchback* were summary judgment, not motion to dismiss, cases, and the courts assessed the futility of the application gesture on the basis of a full factual record, not as a matter of pleading. As a matter of pleading, Plaintiff has raised a plausible inference that the job advertisement was discriminatory on its face, as confirmed by the EEOC, and that application or further inquiry would have been futile. At this stage in the litigation nothing further is required of Plaintiff.

III.    PLAINTIFF HAS STATED A CLAIM UNDER TITLE VII.

For the reasons already discussed, Plaintiff has validly stated a violation of Title VII and her claim under this statute may proceed. The "futile gesture" doctrine is well established in this context and the pleadings plausibly allege that the language of the advertisement acted as a deterrent to white, straight students, thus discriminating on the basis of race and sex, as the EEOC already found. King & Spalding disingenuously asserts that Plaintiff deprived it of "the opportunity to consider whether she would be a good choice for the summer associate program."

Mot. Dismiss at 25. This turns the advertisement on its head. King & Spalding's goal was to recruit racial and sexual minorities based on their immutable characteristic—not to see if white, straight candidates would be a "good choice." As a result, the advertisement establishes a *prima facie* case of discrimination. This is not to say that Plaintiff will necessarily prevail on her claim on a full record, only that she has raised a plausible inference that the language of the advertisement acted as a deterrent to white, straight student applicants in violation of Title VII. Defendant claims it had a non-discriminatory motive in posting the advertisement, but this too is a question of fact, not of law. If all the people hired under the program were either members of ethnic minorities or non-straight students this would establish, on summary judgment, that the advertisement not only on its face, but also in application, discriminated on the basis of race and sexuality.

A.     King & Spalding's "Efforts to Diversify" Is an Impermissible Pretext for Hiring on the Basis of Race and Sex.

King & Spalding attempts to salvage its facially discriminatory job posting by alleging that is real purpose in seeking applicants with the "must have" correct "ethnic and cultural" or sexual orientation was to promote "diversity." Mot. Dismiss. at 23. According to King & Spalding, even a racially and sexually exclusionary policy can pass muster under Title VII if it has the right goals. This is wrong. First, Defendant confusingly relies on *Duffy v. Wolle*, 123 F.3d 1026, at 1038-39 (8th Cir. 1997). Mot. Dismiss at 23. But *Duffy* was abrogated by *Torgerson v. City of Rochester*, 643 F.3d 1031, 1049 (8th Cir. 2011), in which the 8th Circuit went to great lengths to rebut charges that the two "diverse" plaintiffs, who were objectively less qualified than other candidates had nonetheless been subject to racial or gender-based discriminated. While it is still possible to take racial and other factors into account in reviewing employment applications, neither *Duffy* nor *Torgerson* provide any support for the extraordinary proposition advanced by Defendant, that even <u>explicit</u> discrimination in the hiring process is permissible if

this process is animated by the "right" goals. This is not the law. Explicit discrimination is <u>never</u>

permissible.

Defendants then cite to *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004) in an

attempt to provide an analytical framework to assess their advertisement. Mot. Dismiss at 23.

But this too is a strange case for Defendant to cite at this stage in the proceedings. *Hammer* was a

case decided under the familiar *McDonnell Dougla*s <u>*summary judgment*</u> (not motion to dismiss)

standard, under which:

> [T] plaintiff must first establish a prima facie case of discrimination, whereupon the
> burden shifts to the employer to establish a legitimate, nondiscriminatory reason for
> taking the allegedly discriminatory action. If the employer presents such a reason, the
> plaintiff must show that the employer's proffered explanation is pretextual or his claim
> will fail.

*Id.*

In *Hammer* all parties agreed that the plaintiff, a white male, had made out a *prima facie*

case of discrimination when an African American candidate was hired over him. *Id.* However,

the government offered non-pretextual reasons for preferring the African American candidate:

the candidate had scored significantly better than Hammer during the application process for the

position. *Id*. The burden shifted to Hammer to show that the government's rationale was

pretextual and that the preferred candidate had been chosen on the basis of race. *Id*. The

*McDonnell Douglas* framework is not helpful here for three reasons: first, most obviously, the

Court is deciding a motion to dismiss and not a summary judgment motion.

Second, this is the rare case in which race is not a factor being considered to <u>*broaden*</u> an

applicant pool, Mot. Dismiss at 23, but one in which the employer is overtly seeking to <u>*restrict*</u>

the applicant pool on the basis of race and sexuality. On a full factual record, King & Spalding

may attempt to follow *McDonnell Douglas* and show that it had a legitimate non-discriminatory

reason for restricting applicants for its 1L program along racial, ethnic or sexual orientation lines.

19

This will be difficult, because the purpose of the program is precisely to favor racial and sexual minorities over white, straight candidates _regardless_ of the merits.

Third, discrimination here is not hiding behind a pretext; it is being _openly_ promoted. Such an approach, even on summary judgment, will not prevail. There is a world of difference between believing "diversity" to be an admirable socio-cultural goal and hiring along explicitly racial or sexual lines. Admirable goals can never be placed in service of overt racism—which is exactly what occurred here.

B. Plaintiff Has Adequately Alleged Causation.

The Supreme Court has recognized that when an employer's discriminatory policy is known, subjecting oneself to the humiliation of explicit and certain rejection is not required to make out a case of discrimination. _United States v. Gregory_, 871 F.2d at 1242. Here King & Spalding's discriminatory policy arose from the language of the advertisement itself and, therefore, as a member of the "wrong" race and sexuality, Plaintiff has alleged she was deterred from applying because of the facially discriminatory language of the gesture. In every futile gesture case, causation must be inferred at the pleading stage because, by definition, the plaintiff did not apply for the position or benefit sought and suffered damages by the deterrence. _See, e.g._, _Brown v. McLean_, 159 F.3d 898, 902 (4th Cir. 1998) (plaintiff can make out elements of case where unwillingness to engage in the futile gesture of formally applying for the position in question is excused); _Mayfield v. Meese_, No. CIV. A. 86-435, 1987 WL 10494, at *2 (D.D.C. Apr. 24, 1987), _modified_, No. CIV.A. 86-435, 1987 WL 33816 (D.D.C. Sept. 1, 1987) (causation shown by futility of application). _Cf. Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn._, 108 F. Supp. 2d 549, 599 (W.D. Va. 2000) (proof of causation excused where obtaining permit would have been futile).

20

IV.    PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR PUNITIVE DAMAGES AND AN APOLOGY.

A.    Punitive Damages.

King & Spalding correctly states that an aggrieved party may recover punitive damages only if the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 150-51 (4th Cir. 2017). In support of its position that punitive damages are not warranted in the instant case, King & Spalding relies primarily *McKinney v. Cleveland Cnty. Bd. of Educ.*, No. 3:20-CV-221-MOC-DSC, 2020 WL 6803846, at *8 (W.D.N.C. Nov. 19, 2020), *aff'd*, No. 22-1697, 2023 WL 4637115 (4th Cir. July 20, 2023) and *Jarvis v. FedEx Off. & Print Servs., Inc.*, No. CV DKC 2008-1694, 2009 WL 10709217, at *7 (D. Md. Mar. 10, 2009). *See* Mot. Dismiss at 26. However, these two cases do not apply in the present context. McKinney was neither a Title VII nor a § 1981 case, and thus is inapplicable here. In *Jarvis*, although the court found there was no basis for an award of punitive damages, the Court also, and more importantly, held that *Jarvis* had failed to state any claim for interference with his contractual rights under § 1981. *Jarvis* 2009 WL10709217 at *5-7. Jarvis had simply entered a Fed Ex store and, while he was subjected to racism and the use of the "N" word, there was no evidence that he intended to enter into a contractual relationship with Defendant. *Id.* As a result, his § 1981 claim was dismissed, and, with it any claim for punitive damages under § 1981.

The situation could not be more different here. In the present case, Plaintiff has made out a *prima facie* case that she was deterred from applying for a position because of its overt racial and sexual discrimination. At the pleading stage, Ms. Spitalnick has raised a plausible inference that King & Spalding, a law firm familiar with Title VII and § 1981, intentionally chose to discriminate on the basis of race and sexuality. Intentional racial discrimination obviously shows

"a reckless indifference to [a plaintiff's] federally protected rights, and if confirmed in discovery, plainly warrants an award of punitive damages." *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1432 (4th Cir. 1992) (Luttig, J. concurring in part and dissenting in part) ("racial discrimination is antithetical to the most fundamental principles of the Constitution, and juries should be given wide berth to express their justified intolerance of its persistence"). Because factors such as "malice" and "reckless indifference" are highly fact-specific, Plaintiff's claim for punitive damages should be allowed to proceed at this preliminary stage. Discovery may reveal additional facts, such as King & Spalding's awareness that advertising "must have" racial and sexual characteristics violated federal anti-discrimination law, but decided to proceed anyway because the firm viewed the odds of being caught to be low and the reputational benefits to outweigh the risks. As a result, Plaintiff's punitive damages claim should be allowed to proceed. *See Jones v. Henderson Properties, Inc.*, No. 3:23-CV-00744-FDW-SCR, 2024 WL 2820369, at *5 (W.D.N.C. June 3, 2024) (denying motion to dismiss punitive damages claim because at "this early stage" in the litigation, the "allegations sufficiently establish a plausible basis for punitive damages"); *see also Jones v. Cap. Transportation Inc.*, No. 4:14CV15-RH/CAS, 2015 WL 6126832, at *2, 5 (N.D. Fla. Oct. 16, 2015) (sustaining award of $196,500 on lost profits of $53,500 and stating "[p]unitive damages are disfavored, and rightly so. But intentional racial discrimination is also disfavored, and rightly so. When [a party] intentionally discriminates based on race in a way nobody could assert is legal, punitive damages may be awarded to punish the defendant and deter violations by others.").

B.  Apology.

While Courts are reluctant to require defendants to issue apologies, such relief is not unheard of, particularly with regards to attorneys, who, as officers of the Court are held to the

22

highest ethical standards, and for whom racial and sexual discrimination should be anathema. *United States v. Hughes*, No. CR 2016-0021-3, 2021 WL 5236491, at *2 (D.V.I. Nov. 9, 2021) (ordering attorney to issue apologize for profanity-laced text); *Villescas v. Abraham*, 285 F. Supp. 2d 1248, 1256 (D. Colo. 2003) (stating that an apology was a permissible equitable remedy); *Wells v. Lobb & Co., Inc.*, Nos. Civ.A. 97-WM-1011, Civ.A. 97-WM-1317, Civ.A. 98-WM-279, 1999 WL 1268331 (D. Colo. Dec. 1, 1999) (ordering defendants to deliver letter of apology to plaintiff); *Norris v. Poole*, No. 8:10-750-JFA-BHH, 2010 WL 1903970, at *3 (D.S.C. Apr. 19, 2010) (stating that an apology is available "in extraordinary circumstances"). Rather than dismissing Plaintiff's request for an apology outright, the Court should defer action to assess whether discovery reveals any "extraordinary circumstances" underlying Defendant's *prima facie* discriminatory conduct, such that an apology would be warranted on the facts of this case.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety.

Dated: November 8, 2024

Respectfully submitted,

*Eden P. Quainton*

Eden P. Quainton, Esq.
QUAINTON LAW, PLLC
2 Park Avenue, 20th Floor
New York, NY 10016
Phone: (212) 419-0575
Eden.quainton@quaintonlaw.net

Jonathan Gross Esq.
Law Office of Jonathan S. Gross
Bar Number: 21800
2833 Smith Ave., Suite 331

23

Baltimore MD, 21208
Phone: (443) 813-0141
jonathansgross@gmail.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, EDEN P. QUAINTON, hereby certify that on this 8th day of November 2024, the foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss was served via the ECF filing system on the following parties:

Guy G. Brenner
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C. 20004
(T) 202-416-6830
(F) 202-416-6899
gbrenner@proskauer.com
Bar No. 21171

Evandro C. Gigante (admitted *pro hac vice*)
Keisha-Ann G. Gray (admitted *pro hac vice*)
Melanie M. Speight (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036
(T) 212-969-3000
(F) 212-969-2900
egigante@proskauer.com
kgray@proskauer.com
mspeight@proskauer.com

*Attorneys for Defendant*
*King and Spalding, LLP*

                                        */s/ Eden Quainton*
                                        EDEN P. QUAINTON, ESQ.

                                        2 Park Ave, 20th Fl.
                                        New York, New York 10016
                                        Telephone: (212) 419-0575
                                        eden.quainton@quaintonlaw.net

                                        *Attorneys for Plaintiff Sarah Spitalnick*